## CIRCUIT COURT OF THE CITY OF ROANOKE

Financial Recovery, Inc.

v.

Sanshell Products, Inc.

March 18, 1993

Case No. CR92–1407

BY JUDGE JACK B. COULTER

This procedural contest invites further refinement and illumination on the extent or limitations of personal jurisdiction over out-of-state residents under Virginia's Long Arm statute. Except as to minor differences in detail and attempted partisan spins as to their significance, the basic facts are clear and relatively undisputed.

The plaintiff, Financial Recovery, Inc., is a Virginia corporation doing business as a collection agency located in Salem, Virginia. This company solicits delinquent accounts from creditors whose debts have been unsatisfied and seeks by persuasion, threats, and ultimate lawsuits through selected attorneys to obtain or enforce collection against such debtors, whether within or without the Commonwealth of Virginia. If and when successful, in whole or in part, Financial receives a commission for its efforts. Its compensation is contingent, based on and measured by results achieved. Apparently, all of whatever is collected is remitted to its client-customer-creditor who is thereafter billed for services rendered.

The defendant, Sanshell Products, Inc., is a small West Virginia corporation whose sole place of business is located in Oak Hill, West Virginia. All of its approximately nine employees reside in Fayette County, West Virginia. It has no sales agents in Virginia, neither advertises nor solicits business in Virginia, had no customers in Virginia

prior to the activities that provoked this lawsuit,[1] and had never met personally in Virginia with the plaintiff, at least as to the subject account. Ninety-seven percent of its business, dealing mostly in re-chipped bits associated with the coal industry, was conducted in West Virginia. The Maben Energy account, the generating subject of this litigation, was a West Virginia business having no connection whatso-ever with the Commonwealth of Virginia. If suit against this debtor became necessary, it would have to have been brought in the State of West Virginia.

Financial claims that Sanshell "retained [its] services and initiated the subject transaction." Sanshell maintains that Financial "concedes that it [Financial] initiated the relationship with Sanshell by letter and by personal contact in West Virginia to solicit Sanshell's collection business." Who initiated the engagement relative to the collection of the Maben Energy account, therefore, is not in agreement.

Sanshell admits that on two prior occasions it had "permitted" Financial to make collection efforts resulting in some small success. Financial contends that they "had a history of business dealings on three separate occasions prior to the subject transaction."

Sanshell concedes that it ultimately "authorized" Financial to attempt collection of the subject account, howsoever it may have originated. Thereafter, Sanshell made two or three inquiries concerning the status of collections and terminated the arrangement in the final telephone call. No recoveries on the Maben Energy account were received, according to the defendant's Brief, or remitted to Sanshell by Financial. Whether this bifurcated statement in the defendant's Brief means that Sanshell never received anything on its delinquent accounts directly from the Maben Energy debtor need not be pursued at this stage of the controversy.

The plaintiff, on the other hand, contends that the "arrangement" was consummated when on May 26, 1992, Sanshell faxed a request to Financial for it to begin its collection efforts relative to the subject account (plaintiff's exhibit A). This arrangement was confirmed by Financial's acknowledgment of receipt (plaintiff's exhibit B) in which the plaintiff reported, "We are in receipt of the above-styled accounts

---

[1] The fact that it undertook some small business in Virginia after its engagement with the plaintiff is not a factor being considered in the resolution of this jurisdictional controversy.

and will begin collection efforts immediately. I will keep you advised of my progress. Thank you for the opportunity of working with you on these claims."

Thereafter, Financial represents that it began its usual collection efforts by phone calls and letters to the debtor and the debtor's attorney. Plaintiff has submitted a letter dated June 4, 1992, from Financial to John Rist, presumably the attorney representing the debtor on the Maben Energy account, which includes an offer to settle Sanshell's past due debt. "Sanshell is amenable to reducing the account to a four-month note. The note would bear 10% interest with a payment of four equal payments of $42,919.84." (Thus "reducing" the account to $171,679.36!)

Whether or not Financial was authorized to make this offer is irrelevant to the issue of the moment. It only tends to indicate that Financial did perform, or attempt to perform, its "arrangement" with Sanshell.

The plaintiff finally claims that as a direct result of its efforts, Maben Energy made a series of payments, retired the debt directly and secretly with Sanshell in the amount of $90,000, and now claims a commission due thereon of $18,000 on a contingency fee of 20%, somewhat less than the $33,632.29 based on a claimed contingency fee arrangement of one-third as set forth originally in its Motion for Judgment. But these matters and claims, presumably in hot dispute, are not yet ripe for resolution.

### The Issue: Is Sanshell Subject to Personal Jurisdiction under Virginia's Long-Arm Statute?

The pertinent parts of the Long-Arm Statute are presented and ably argued with equal vigor but opposite views by the contesting parties. The relevant portions of § 8.01–328.1 of the Code of Virginia provides: "A Court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth . . . ." and "B. . . . only a cause of action arising from acts enumerated in this section may be asserted against him . . . ."

The defendant's argument that any set of facts involving circumstances with the plaintiff not connected with the Maben Energy account is irrelevant is accepted for the purposes of this decision. Neither the prior history, which may have background significance, nor subse-

quent services in Virginia to unrelated Virginia customers, which is not relevant, is a factor of any influence in this Court's deliberations.

What is the "cause of action" made out in the plaintiff's motion for judgment? This is the first question that must be addressed. Is not the plaintiff claiming a breach of contract? Regardless of who might have initiated any preliminary negotiations, a contract was created. The defendant, in effect, concedes this when it recognizes the relationship as an "arrangement." The so-called "arrangement" is the contract which the plaintiff claims has been broken. That the contract was consummated is further established when the defendant admits: "Sanshell ultimately authorized Financial Recovery to attempt collection of [the subject] accounts." The pleadings and evidence to date further demonstrate that the plaintiff acted in response to or reliance on such admitted authorization.

The terms of that contract, at least insofar as the plaintiff alleges, were that Financial would use its efforts, expertise, and resources to effect collection of the account and to such extent that it might be successful — with or without litigation — a commission would be due based on a certain contingency percentage of one-third or twenty per cent.

The defendant, in other words, affirmatively engaged the plaintiff and authorized the "arrangement" whereby Financial would undertake from its Salem, Virginia, offices to collect the account being referred to it. That was a transaction with a Virginia enterprise contemplating activity in Virginia, such as phone calls and correspondence and the expertise of its calling, by a Virginia agency. The Virginia company, responding from the engagement duly authorized, instituted action from Virginia that, if successful, called for receipt in Virginia of the results of its efforts short of litigation. Although any lawsuit would have been required to have been brought in West Virginia, that was only the ultimate step to be taken. The scope of its contract presupposed preliminary activity originating from its Virginia office, its personnel, reputation, and expense. Not only did staff and stationery become involved, but impact on its business license was an anticipated consequence. The "cause of action" is the claimed breach of the Virginia contract and all of the Virginia input necessarily generated thereby. It could not have been within the reasonable contemplation of the parties that Financial would exert its efforts from some non-Virginia outpost.

Without attempting to analyze or differentiate each of the several cases cited, some of which involve tort actions where the sites of the tort would be of influence, the court is satisfied from a critical reading of the statute, when reinforced by the rationale of *I. T. Sales, Inc. v. Dry*, 222 Va. 6 (1981), that the formation of a Virginia contract alone is sufficient to confer personal jurisdiction on a non-resident under Virginia's Long-Arm Statute. Where else would this contract, consummated by the defendant's authorization of a Virginia collection agency to pursue collection efforts on its behalf, been performed, at least partially, short of actual litigation, other than in Virginia.

For these reasons, therefore, and upon the analysis aforesaid, the defendant's motion to dismiss is accordingly overruled.